IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MICHELLE BERGMAN, *et al*.,

*Plaintiffs*,

v.

SPRUCE PEAK REALTY, LLC and STOWE MOUNTAIN LODGE, LLC,

*Defendants*.

Class Action

Civil Action No. 2:11-cv-00127-WKS

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO STAY AND ENJOIN THE PENDING AAA ARBITRATION PROCEEDING**

Plaintiffs Michelle Bergman, Jeffrey D. Bergman, David Friend, Steps Away at Stowe Mountain LLC, Patrick Sullivan, Shelagh Sullivan, Karen Flatow, Tall Pines LLC, and George Wilson, individually and on behalf of a class of all those similarly situated persons described in the Complaint (collectively, "Plaintiffs"), by and through their attorneys, Barr & Associates, P.C., hereby submit the following Memorandum of Law in opposition to Defendants' July 18, 2011 Cross-Motion to enjoin the pending AAA arbitration proceeding (Papers 20-21). Plaintiffs state as follows:

**MEMORANDUM OF LAW**

**INTRODUCTION**

Plaintiffs brought this action on behalf of a class of approximately 324 persons and entities located throughout the United States and various foreign countries that own interests in residential units at the Stowe Mountain Lodge Condominium. The primary relief Plaintiffs seek is the reformation of the Declaration of Covenants, Conditions, Easements and Restrictions for Stowe Mountain Lodge Condominium (the "Declaration") (Paper 1-1), which Plaintiffs contend violates the Vermont Common Interest Ownership Act, 27 V.S.A. §§ 1-101 to 4-120

("VCIOA"), the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g ("VCFA"), and Vermont common law.

The only way Plaintiffs can obtain the desired Declaration reformation is via a class action. The Declaration contains an arbitration clause (§ 12.18), hence Plaintiffs commenced this action to toll any statutes of limitations, quickly filed an American Arbitration Association ("AAA") class action arbitration proceeding (Paper 6-1), and then moved to stay this action pending arbitration (the "Stay Motion") (Papers 6 and 27).

Plaintiffs anticipated that Defendants would consent to the Stay Motion and proceed to arbitration. Instead, Defendants fired back with a 19-page Memorandum of Law opposing the Stay Motion and cross-moving to enjoin the arbitration proceeding (Paper 20) (the "Opposition/Cross-Motion"). In addition, Defendants interposed a 26-page Memorandum of Law (Paper 17-1) in support of a separate Motion to Dismiss this case (Paper 17) (the "Motion to Dismiss") even though, as explained below, they agree with Plaintiffs that the issues involved in this suit are referable to arbitration.[1]

Despite the enormous inefficiencies to parties and tribunals alike, Defendants would rather have numerous individual actions than one class action. Clearly, they are attempting to insulate themselves from potential declaratory relief.

Defendants' Cross-Motion is not only baseless, but it is premised almost entirely on what can only be described as a fatally incorrect and grossly misleading interpretation of Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758 (2010). According to Defendants, Stolt-Nielsen controls this case and requires an injunction because the Declaration is "silent" on the issue of class arbitration. Opposition/Cross-Motion, at 7. In reality, Stolt-Nielsen recognized

[1] Pursuant to a Court-ordered stipulation (Papers 25-26), Plaintiffs' deadline to oppose the Motion to Dismiss is October 31, 2011. If this Court grants Plaintiffs' Stay Motion prior to October 31st, that would obviate the need for Plaintiffs to file an opposition.

expressly (at page 1775) that there could be an "implicit agreement to authorize class-action arbitration," and legions of courts, including the Second Circuit, have held since Stolt-Nielsen that arbitration agreements can allow plaintiffs to pursue class arbitration even though the agreement lacks an express provision permitting class arbitration. See Point III, below.[2]

The law is equally clear that the ability of plaintiffs to arbitrate on a class basis is an issue to be determined by the arbitrator, including in situations where, as here, the parties contest whether the agreement to arbitrate is silent or ambiguous on the issue of class arbitration. See Points I to III, below. In sum, the Cross-Motion is frivolous and it should be denied.

## STANDARD OF REVIEW

A motion to enjoin an arbitration proceeding requires the same showing as a motion for a preliminary injunction or a temporary restraining order. See generally UBS Fin. Servs., Inc. v. West Va. Univ. Hosps., Inc., No. 11-235-cv, 2011 U.S. App. LEXIS 19420, at **13-14 (2d Cir. Sept. 22, 2011); and Accenture LLP v. Spreng, No. 10-cv-9393, 2010 U.S. Dist. LEXIS 137744, at **3-4 (S.D.N.Y. Dec. 23, 2010), appeal dismissed, 647 F.3d 72 (2d Cir. 2011).

Temporary restraining orders and preliminary injunctions are "among 'the most drastic tools in the arsenal of judicial remedies,' and must be used with great care." Accenture, 2010 U.S. Dist. LEXIS 137744, at *3 (quoting Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)).

In order to enjoin an arbitration proceeding, the moving party must demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." UBS Fin. Servs., 2011

---

[2] Defendants audaciously accuse Plaintiffs (at 2) of "[i]gnoring clear Supreme Court precedent" when, as demonstrated below, it is they who play recklessly fast and loose with the case law, even going so far as to use (at 7) an ellipse-ridden Stolt-Nielsen excerpt in a transparent effort to deceive this Court about the viability of implicit agreements to authorize class-action arbitration.

U.S. App. LEXIS 19420, at *14 (internal quotes and citations omitted). See also Accenture, 2010 U.S. Dist. LEXIS 137744, at **3-4 (same).

Moreover, "[t]hese elements must be established by a preponderance of the evidence." Accenture, 2010 U.S. Dist. LEXIS 137744, at *4 (internal quotes and citation omitted).

To satisfy the irreparable harm requirement, the movant must demonstrate that, absent a preliminary injunction, "it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotes and citation omitted).

## ARGUMENT

## POINT I

### THE PARTIES AGREE THAT THE ISSUES INVOLVED IN THIS SUIT ARE REFERABLE TO ARBITRATION, AND THE LAW IS CLEAR THAT THE PROCEDURAL QUESTION OF 'WHAT KIND OF ARBITRATION THE PARTIES AGREED TO' IS FOR THE ARBITRATOR TO DECIDE.

Defendants admit in their Opposition/Cross-Motion that the issues involved in this suit are referable to arbitration under a written arbitration agreement, i.e., the Declaration's arbitration clause (§ 12.18). See Opposition/Cross-Motion, at 1 (asking the Court to "stay or enjoin Plaintiffs from proceeding in the AAA class arbitration unless Plaintiffs' arbitration demand is refiled as separate individual arbitrations as required by the parties' agreements") (emphasis added). See also id. at 3 ("Defendants agreed only to resolve any disputes they may have [with Plaintiffs] in *individual* arbitrations") (underscored emphasis added); and 14 ("Each [Plaintiff] must commence their own individual arbitration, as contemplated by the Declaration.") (footnote omitted).

Accordingly, because the parties agree that the issues involved in this suit are referable to arbitration, Plaintiffs are entitled to a stay of this case pending arbitration. See Stay Motion

Reply (Paper 27), at Point II. Moreover, Defendants' halfhearted protestations about a lack of agreement as to the manner of arbitration are baseless. See Opposition/Cross-Motion, at 2 ("… the parties never agreed to arbitrate in this manner") (emphasis added); and 13 ("… Defendants did *not* agree to participate in an arbitration where multiple Plaintiffs would join in….") (underscored emphasis added).

Indeed, courts distinguish between the questions of "what kind of arbitration proceeding the parties agreed to" (a procedural question) versus "whether the parties agreed to arbitrate a matter" in the first instance (a question of arbitrability), and the law is clear that procedural questions – such as whether the parties agreed to class arbitration – are for the arbitrator. See UBS Fin. Servs., Inc. v. West Va. Univ. Hosps., Inc., No. 11-235-cv, 2011 U.S. App. LEXIS 19420, at **31-33 (2d Cir. Sept. 22, 2011) (citing cases); and Guida v. Home Sav. of Am., Inc., No. 11-CV-00009, 2011 U.S. Dist. LEXIS 69159, at **6-7 (E.D.N.Y. June 28, 2011) ("… where, as here, there is disagreement over whether the agreement to arbitrate permits class arbitration and the agreement does not explicitly address this issue, the ability to proceed on a class basis is a procedural question involving contract interpretation and is therefore for the arbitrator to decide in the first instance") (emphasis added). See also Point III, below.

Moreover, as explained below in Point II, because the Declaration incorporates clear and unmistakable expressions of the parties' intent to leave questions of arbitrability to the arbitrator, any such questions are for the arbitrator, as well. See Point II, below.

**POINT II**

**THE DECLARATION INCORPORATES CLEAR AND UNMISTAKABLE EXPRESSIONS OF THE PARTIES' INTENT TO LEAVE QUESTIONS OF ARBITRABILITY TO THE ARBITRATOR.**

The incorporation of the AAA Rules into an arbitration agreement constitutes a clear and unmistakable expression of intent to leave questions of arbitrability to the arbitrator. Courts have

so held because the AAA rules specify that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." See AAA Commercial Arbitration Rule 7(a).

Where, as here, the Declaration's arbitration clause references the AAA Rules, it is for the arbitrator to decide questions of arbitrability (i.e., whether the parties agreed to arbitrate a particular issue). See, e.g., JSC Surgutneftegaz v. President & Fellows of Harvard College, 167 Fed. Appx. 266, 268 (2d Cir. 2006) ("[t]he intent of the parties to commit the question of arbitrability to the arbitrator is further demonstrated by the incorporation of the rules of the [AAA] that empower the arbitrator to determine issues of arbitrability"); and Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005) ("when, as here, parties explicitly incorporate [AAA] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator") (citing cases). Accord Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 394-95 (2d Cir. 2011) (applying the rule in Contec to the UNCITRAL provision that delegates questions of arbitrability to the arbitral panel).

In the instant case, Declaration § 12.18 states that arbitration "shall be conducted in accordance with the Commercial Rules of the American Arbitration Association" (emphasis added). In light of this clear and unmistakable expression of intent to leave questions of arbitrability to the arbitrator, it is up to the arbitrator to decide such questions.

Such a result is consistent with strong federal and Vermont public policy favoring arbitration. See Arrigo v. Blue Fish Commodities, 408 Fed. Appx. 480, 481 (2d Cir. 2011) (per curiam) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability") (quoting Moses H. Cone Mem.

Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); Chevron Corp., 638 F.3d at 393 (same); Costle v. Fremont Indem. Co., 839 F. Supp. 265, 272 (D. Vt. 1993) (Parker, J.) ("… where a contract contains an arbitration clause, there is a presumption of arbitrability that is overcome only by a definitive showing that the dispute in question is outside the coverage of the arbitration clause," and all doubts are resolved in favor of arbitration") (citation omitted); and Vermont Built, Inc. v. Krolick, 2008 VT 131, ¶ 13, 185 Vt. 139, 146, 969 A.2d 80, 86 ("we have long recognized the importance of arbitration as an alternative to litigation for the efficient resolution of disputes….") (internal quotes and citation omitted).

Further proof of the parties' clear and unmistakable intent to commit questions of arbitrability to the arbitrator and not the courts can be found in Declaration § 12.18, which provides in pertinent part that: "All disputes … shall, upon the request of any party, be resolved by binding arbitration…." (emphasis added).

The broad sweep of the Declaration's "All disputes" language is further evidence of the parties' clear and unmistakable intent to commit questions of arbitrability to the arbitrator. Cf. JSC Surgutneftegaz, 167 Fed. Appx. at 268 ("the extremely broad terms of the Deposit Agreement's arbitration clause plainly evince an intent to have the question of arbitrability decided by an arbitrator") (footnote omitted); and PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199-1200 (2d Cir. 1996) (a clause referring "any and all" controversies to arbitration is "inclusive, categorical, unconditional and unlimited" and it is a "broad grant of power to the arbitrators" demonstrating "that the parties intended to arbitrate issues of arbitrability").

Lastly, Defendants' State law arguments (at 16-19) based on the Vermont Arbitration Act, 12 V.S.A. §§ 5651-5681 ("VAA"), are without merit.  As an initial matter, the FAA preempts the VAA to the extent that the State law is inconsistent with the federal statute.  See Little v. Allstate Ins. Co., 167 Vt. 171, 172-74, 705 A.2d 538, 539-41 (1997).

Moreover, Defendants neglect to mention that the VAA mandates as follows: "An order to compel arbitration shall not be refused on the ground that the claim in issue lacks merits or bona fides nor because the applicant has failed to show fault or grounds for the claim sought to be arbitrated." 12 V.S.A. § 5674(f). See generally Howard & Howard, Inc. v. Mountain Auto Servs., Inc., No. 157-6-09 Lecv, 2009 Vt. Super. LEXIS 22, at **13-14 (Vt. Super. Ct. Lamoille Cty. Oct. 13, 2009) ("Plaintiff's assertion that the alleged lack of bona fide dispute between the parties requires a stay of arbitration is erroneous" because, pursuant to 12 V.S.A. § 5674(f), "once a valid controlling arbitration clause is found, the issue of whether there is a bona fide dispute between the parties is not for the Court to resolve").[3]

**POINT III**

**DEFENDANTS CANNOT ESTABLISH IRREPARABLE HARM OR A LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE ARBITRATOR IS THE APPROPRIATE DECISION-MAKER ON THE ISSUE OF WHETHER THE PARTIES AGREED (EXPRESSLY OR IMPLICITLY) TO CLASS ARBITRATION, SUCH A DECISION HAS NOT YET BEEN RENDERED, AND DEFENDANTS CAN REQUEST JUDICIAL RELIEF IF THEY DISAGREE WITH THE ARBITRATOR'S EVENTUAL CLAUSE CONSTRUCTION AND/OR CLASS CERTIFICATION DECISIONS.**

Numerous courts "have concluded, subsequent to Stolt-Nielsen, that the ability of plaintiffs to arbitrate on a class basis is an issue to be determined by the arbitrator," including in situations where "the parties contest whether the agreement to arbitrate is silent or ambiguous on the issue" of class arbitration. Guida v. Home Sav. of Am., Inc., No. 11-CV-00009, 2011 U.S. Dist. LEXIS 69159, at **11-12, **16-17 (E.D.N.Y. June 28, 2011) (citing cases).

In Guida, for example, several individual plaintiffs filed a federal class action lawsuit against their employer alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et.

[3] Defendants' Vermont counsel in the instant case represented the Plaintiff in Howard & Howard, which sought unsuccessfully to halt a duly filed AAA arbitration proceeding. The undersigned represented the arbitration-seeking Defendant in Howard & Howard. Litigating for a second time against the same opposing counsel just to get to arbitration feels like what Yogi Berra once described as "déjà vu all over again." Yogi Berra, The Yogi Book: I Really Didn't Say Everything I Said 30 (1998).

seq., and related New York state wage and labor laws. Guida, at *1. The defendant moved to dismiss the complaint and to compel arbitration on an individual basis pursuant to the FAA. Id. Plaintiffs agreed to arbitrate the dispute but argued that the arbitrator should decide whether the arbitration could proceed on a class basis. Id. at **1-2.

In a thorough and scholarly opinion, Judge Joseph F. Bianco first harmonized Stolt-Nielsen and the Supreme Court's plurality decision in Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003), where four Justices concluded that the issue of whether an arbitration agreement prohibited class arbitration was a procedural question concerning contract interpretation and arbitration procedures for the arbitrator to decide. See Guida, 2011 U.S. Dist. LEXIS 69159, at **9-15.

Judge Bianco determined that "Stolt-Nielsen and Bazzle are reconcilable and that arbitrating on a class basis is a procedural question that is for the arbitrators to decide in accordance with the Supreme Court's analysis in Stolt-Nielsen, which provides a framework for the arbitrator's analysis of the issue." Guida, 2011 U.S. Dist. LEXIS 69159, at **14-15.[4]

Judge Bianco distinguished the highly unique facts of Stolt-Nielsen, where the parties executed a stipulation stating that their contract was "silent" on the issue of arbitration. Guida, at **18-19 n.6. By contrast, in Guida, as in the instant case, the parties disagree about whether their agreements allow for class arbitration. See id. at *19 n.6 ("Although it is apparent that the agreements at hand do not explicitly address class arbitration, plaintiffs assert that by referring to

[4] Just last week, the Second Circuit cited Bazzle in dicta for the proposition that an arbitrator should decide the procedural question of whether an arbitration agreement prohibits class arbitration. See UBS Fin. Servs., Inc. v. West Va. Univ. Hosps., Inc., No. 11-235-cv, 2011 U.S. App. LEXIS 19420, at **32-33 & n.7 (2d Cir. Sept. 22, 2011). Accord Vaughn v. Leeds, Morelli & Brown, P.C., 315 Fed. Appx. 327, 329 (2d Cir. 2009) (concluding that the district court "properly compelled arbitration on the question of the arbitrability of class claims under the Settlement Agreement," citing Bazzle, 539 U.S. at 452-53, and Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-85 (2002)). (Vaughn pre-dates Stolt-Nielsen, but it is cited with approval in Guida, 2011 U.S. Dist. LEXIS 69159, at *12 & n.5.)

the rules of the American Arbitration Association, which permit class arbitration, the arbitration agreements allowed for class arbitration.").

In the instant case, the Declaration refers (at § 12.18) to the AAA Rules, which permit class arbitration. See AAA Supplementary Rules for Class Arbitrations. The Declaration also states (at § 12.17) that it is "governed by the laws of the State of Vermont." Vermont law provides for class actions, including in the context of the VCFA and VCIOA claims Plaintiffs are asserting here. See generally V.R.C.P. 23. See also Wright v. Honeywell Int'l, Inc., 2009 VT 123, ¶ 31, 187 Vt. 123, 142, 989 A.2d 539, 552 (reversing trial court denial of class certification in a VCFA case); 27A V.S.A. § 4-117(a) ("If a declarant or any other person subject to [VCIOA] fails to comply with any provision of this title or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief….") (emphasis added), and Official Comment 1 to § 4-117(a) ("The section specifically refers to 'any person or class of persons' to indicate that any relief available under the state class action statute would be available in circumstances where a failure to comply with [VCIOA] has occurred.").[5]

In Guida, Judge Bianco considered and rejected the defendant's argument that, in light of AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), the ability to arbitrate on a class basis is not a procedural issue. See Guida, at **19-21. He explained that "nowhere did the Supreme Court suggest [in Concepcion] that it was for the courts to decide whether the parties agreed to arbitrate on a class basis," and he noted that "courts have relied on Bazzle even after

[5] The fact that the Declaration incorporates Vermont law should be a highly significant factor in resolving the question of whether the parties agreed to class arbitration. Cf. Smith & Wollensky Rest. Group, Inc. v. Passow, No. 10-11498-EFH, 2011 U.S. Dist. LEXIS 4495, at **3-4 (D. Mass. Jan. 18, 2011) (refusing to vacate arbitrator's post-Stolt-Nielsen clause construction award in favor of class arbitration, in which arbitrator found that, inter alia, Massachusetts wage laws statutorily authorize an individual employee to bring a class-action in a court of law).

Concepcion was issued." Guida, at *21 (citing Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471 (1st Cir. 2011)).

Rather than "putting the proverbial nail in the coffin of class-action arbitration," as Defendants colorfully but erroneously proclaim (Opposition/Cross-Motion, at 9), Concepcion "essentially stated that class arbitration was disfavored even though the parties could agree to arbitrate on a class basis…." Guida, at *20.

Judge Bianco concluded, "in light of Stolt-Nielsen and Bazzle, that the ability of a class to arbitrate a dispute where the parties contest whether the agreement to arbitrate is silent or ambiguous on the issue is a procedural question that is for the arbitrator to decide." Guida, 2011 U.S. Dist. LEXIS 69159, at **11-12 (footnote omitted).

Indeed, in Jock v. Sterling Jewelers Inc., 646 F.3d 113 (2d Cir. 2011), which was decided just three days after Guida, the Second Circuit held that "the arbitrator [did not] exceed her authority under the agreement or the law by deciding the issue and ruling that the arbitration agreement allowed the plaintiffs to pursue class arbitration even though the agreement lacked an express provision permitting class arbitration." Id. at 124 (emphasis added).

Legions of very recent decisions from around the country are in accord. See, e.g.:

- Vilches v. The Travelers Companies, Inc., 413 Fed. Appx. 487, 492 (3d Cir. 2011) ("Where contractual silence is implicated, the arbitrator and not a court should decide whether a contract was indeed silent on the issue of class arbitration, and whether a contract with an arbitration clause forbids class arbitration") (internal quotes, brackets and citation omitted);

- Saincome v. Truly Nolen of Am., Inc., No. 11-CV-825-JM, 2011 U.S. Dist. LEXIS 85880, at *35 (S.D. Cal. Aug. 3, 2011) (denying defendant's motion for a declaration prohibiting plaintiff from proceeding with his claim on a collective basis at arbitration and holding that "the decision as to what form Plaintiff's action will take going forward is one properly reserved for the arbitrator");

- Hayes v. ServiceMaster Global Holdings, Inc., No. C 10-03887 SI, 2011 U.S. Dist. LEXIS 70160, at **11-14 & n.3 (N.D. Cal. June 29, 2011) (granting in part defendant's motion to compel arbitration and explaining why "[i]t is for the arbitrator to decide

whether [plaintiffs] must bring their claims individually" or whether they can do so in a class action);

- Aracri v. Dillard's, Inc., No. 1:10cv253, 2011 U.S. Dist. LEXIS 41596, at *11 (S.D. Ohio Mar. 29, 2011) (concluding that "it is not for this Court, but for an arbitrator to decide whether class arbitration is forbidden under the Arbitration Agreement and Dillard's Rules of Arbitration" where the arbitration agreement did not explicitly mention class arbitration but the parties contested whether Dillard's Rules provided for class arbitration);

- Sutter v. Oxford Health Plans LLC, Nos. 05-2198 & 10-4903, 2011 U.S. Dist. LEXIS 17123, at **14-15 (D.N.J. Feb. 22, 2011) (declining to vacate arbitrator's decision that the parties' arbitration agreement allowed for class action arbitration and noting that, "after giving full consideration to Stolt-Nielsen, [the arbitrator] concluded that the contractual basis between these parties, i.e. their arbitration agreement, clearly and unambiguously expressed their intent to authorize class action arbitration despite omission of the words 'class action'") (emphasis added);

- Clark v. Goldline Int'l, Inc., No. 6:10-cv-01884, 2010 U.S. Dist. LEXIS 126192, at **21-22 (D. S.C. Nov. 30, 2010) ("[T]he court notes that whether a class is appropriately certified in this case or otherwise is yet to be determined. Second, whether the Account Agreement precludes any putative class member from bringing a claim has no bearing on the validity or enforceability of the arbitration provisions. Such issues raised by Plaintiffs must be determined by an arbitrator, not this court.");

- Smith v. The Cheesecake Factory Restaurants, Inc., No. 3:06-00829, 2010 U.S. Dist. LEXIS 121930, at *7 (M.D. Tenn. Nov. 16, 2010) (concluding that "whether the parties agreed to class arbitration is to be resolved by the arbitrator") (citations omitted); and

- Fisher v. General Steel Domestic Sales, LLC, No. 10-cv-1509-WYD-BNB, 2010 U.S. Dist. LEXIS 108223, at **6-7 (D. Colo. Sept. 22, 2010) (where parties agreed that plaintiffs' claims were subject to arbitration but were contesting whether the agreement in question permitted class arbitration, "based on the plain language of Stolt-Nielsen, it is clear that an arbitrator may, as a threshold matter, appropriately determine whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class" (internal quotes omitted)).

In sum, Defendants cannot establish irreparable harm or a likelihood of success on the merits because the arbitrator is the appropriate decision-maker on the issue of whether the parties agreed (expressly or implicitly) to class arbitration, such a decision has not yet been rendered, and defendants can request judicial relief if they disagree with the arbitrator's eventual clause construction and/or class certification decisions. See Rules 3 and 5(d) of the AAA

Supplementary Rules for Class Arbitrations (permitting judicial challenges to the arbitrator's clause construction award and/or class certification award).

**POINT IV**

**ALTERNATIVELY, THIS COURT SHOULD RULE THAT THE PARTIES AGREED TO ARBITRATE ON A CLASS-WIDE BASIS OR THAT THE DECLARATION DOES NOT REQUIRE ARBITRATION OF CLASS ACTIONS, THEREBY FREEING PLAINTIFFS TO PURSUE THIS DISPUTE IN COURT.**

If this Court elects to hear the issue of whether the Declaration allows for class arbitration, it should conclude that it does. The Declaration, which Defendants drafted, requires the parties to arbitrate "All disputes" (save for a few narrow exceptions not applicable here) by binding arbitration and pursuant to Vermont law. Declaration §§ 12.17 and 12.18.

While the Declaration contains no reference to class arbitration, it explicitly requires the parties to follow the AAA Commercial Rules. Those Rules provide for arbitrations on a class-wide basis. See Rule 3 of the AAA Supplementary Rules for Class Arbitrations (effective October 8, 2003) (the "Supplementary Rules"). Indeed, the Supplementary Rules, which were in existence when Defendants drafted the Declaration, state that they:

> shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

AAA Supp. Rule 1(a) (emphasis added).

Plaintiffs filed their Arbitration Demand pursuant to the Supplementary Rules. See Paper 6-1. Moreover, cases and authorities cited above in Point III demonstrate that Vermont law provides explicitly for class actions. In sum, if this Court elects to hear the issue, it should rule that the parties agreed to arbitrate on a class-wide basis.

Alternatively, this Court should rule that the Declaration does not require arbitration of class actions, thereby freeing Plaintiffs to pursue this dispute in Court.

In order to obtain the injunctive and declaratory relief they seek, i.e., reforming the Declaration, Plaintiffs have no choice but to proceed on a class-wide basis. So, if Defendants' tortured textual analysis (Opposition/Cross-Motion, at 12) is correct that the Declaration does not allow for class arbitration, then this Court can and should rule that the Declaration does not require arbitration for class actions, and that Plaintiffs are free to bring a class-action lawsuit.

To hold otherwise would leave Plaintiffs literally without a remedy, a result which would violate a fundamental State policy against stranding legitimate plaintiffs in a solution-less netherworld while allowing wrongdoers to keep ill-gotten gains without risk of litigation. See generally Wright v. Honeywell Int'l, Inc., 2009 VT 123, 187 Vt. 123, 989 A.2d 539, in which the Vermont Supreme Court reversed the trial court's denial of class certification in a VCFA case and stated that:

> Although trial courts must assure that questions common to the putative class predominate and that a class action would be superior to independent actions, they must not rigidly apply Rule 23 so as to prematurely determine the merits of the case and deny a class of indirect consumers, who as a practical matter cannot obtain relief for alleged antitrust violations in separate proceedings, the opportunity to present their case to a jury. Otherwise, legitimate plaintiffs may be left without a remedy, and defendants may secure unlawful gains without the risk of being sued or prosecuted.

Wright, 2009 VT 123, ¶ 31, 187 Vt. at 142, 989 A.2d at 552 (emphasis added).

Federal courts are equally intolerant of leaving would-be class-action litigants without a remedy. Indeed, even after AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), courts in this Circuit will not construe an arbitration clause in a manner that deprives plaintiffs who have no choice but to proceed on a class basis of a potential remedy. See, e.g., Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950, 2011 U.S. Dist. LEXIS 73200, at **15-17 (S.D.N.Y. July 7, 2011) (denying motion for reconsideration of order invalidating arbitration agreement

because it did not allow for class proceedings, based on conclusion that individual arbitration would preclude plaintiff from enforcing her "substantive right under Title VII to bring a pattern or practice claim," which under governing substantive law may only be brought as a class).

In sum, as an alternative to allowing the arbitrator to decide whether the Declaration allows for class arbitration, this Court should rule that the parties agreed to arbitrate on a class-wide basis or that the Declaration does not require arbitration of class actions, thereby freeing Plaintiffs to pursue this class-action dispute in Court.

## CONCLUSION

For the reasons stated above and in their Stay Motion (Papers 6 and 27), Plaintiffs respectfully request that this Court enter orders staying this case pending arbitration and denying Defendants' Cross-Motion to enjoin the arbitration proceeding. Alternatively, this Court should rule that the parties agreed to arbitrate on a class-wide basis or that the Declaration does not require arbitration of class actions, thereby freeing Plaintiffs to pursue this class-action dispute in Court.

DATED: September 30, 2011
Stowe, Vermont

Respectfully submitted,

BARR & ASSOCIATES, P.C.

/s/ Daniel A. Seff, Esq.

By: Russell D. Barr, Esq.
Jennifer J. Lajoie, Esq.
Daniel A. Seff, Esq.

125 Mountain Road
Stowe, VT 05672
Phone: 802-253-6272
Fax: 802-253-6055
Email: dan@barrlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 30, 2011, I electronically filed with the Clerk of Court the above-captioned document using the CM/ECF system. The CM/ECF system will provide service of such filings via Notice of Electronic Filing (NEF) to the following NEF parties:

    Defendant Spruce Peak Realty, LLC; and
    Defendant Stowe Mountain Lodge, LLC.


DATED:      September 30, 2011
                  Stowe, Vermont

                                      Respectfully submitted,

                                      BARR & ASSOCIATES, P.C.


                                      /s/ Daniel A. Seff, Esq.
                          By:    Daniel A. Seff, Esq.

                                      125 Mountain Road
                                      Stowe, VT 05672
                                      Phone: 802-253-6272
                                      Fax: 802-253-6055
                                      Email: dan@barrlaw.com

                                      *Attorneys for Plaintiffs*