```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

MICHELLE BERGMAN, JEFFREY D.          :
BERGMAN, DAVID FRIEND, STEPS AWAY     :
AT STOWE MOUNTAIN LLC, PATRICK        :
SULLIVAN, SHELAGH SULLIVAN, KAREN     :
HESSE FLATOW, TALL PINES LLC, and     :
GEORGE WILSON, individually and on    :
behalf of a class of similarly        :
situated persons,                     :
                                      :
          Plaintiffs,                 :
                                      :
     v.                               :    Case No. 2:11-cv-127
                                      :
SPRUCE PEAK REALTY, LLC and           :
STOWE MOUNTAIN LODGE, LLC,            :
                                      :
          Defendants.                 :
                                      :
```

**MEMORANDUM OPINION and ORDER**

The Plaintiffs, individually and on behalf of a class of similarly situated persons, have moved for a stay of proceedings in this case pending arbitration, pursuant to 9 U.S.C. § 3. The Defendants have cross-moved to enjoin Plaintiffs from proceeding in the arbitration unless the arbitration demand is refiled as individual arbitration demands. Because the arbitration provision neither expressly permits nor prohibits class arbitration, the matter is referred to arbitration for a determination of whether the parties agreed to class arbitration. The Plaintiffs' motion, ECF No. 6, is therefore **granted**, and the Defendants' motion, ECF No. 21, is **denied**, for the reasons that follow.

**I.   Background**

Plaintiffs, owners of interests in residential units in the Stowe Mountain Lodge Condominium ("Condominium"), have sued the developers of the Condominium,[1] alleging that Defendants have illegally and fraudulently allocated expenses and voting rights in order to favor their commercial units, and have charged back to the residential unit owners a substantial portion of the fees that Defendants should be paying.  In their Class Action Complaint, Plaintiffs asserted that they intended to commence arbitration proceedings before the American Arbitration Association ("AAA"), that the complaint was filed in order to toll the statute of limitations, and that they would request a stay during the pendency of the arbitration proceedings.[2]

Plaintiffs submitted a "Class Action Arbitration Demand" to the AAA, and moved for a stay of the case in this Court.

The Condominium is a complex located on Mount Mansfield in

---

[1] Defendant Spruce Peak Realty, LLC ("Spruce Peak") was the original developer until Defendant Stowe Mountain Lodge ("SML") succeeded it in 2007.  Currently Spruce Peak is the "Shared Amenities Unit Owner."  SML is the Condominium "Declarant," the owner of the Retail Unit and the Spa Unit, and the owner of unsold residential units.

[2] In a separate class action complaint, Plaintiffs have brought suit against the same Defendants, seeking a declaration that their Shared Amenities and Services Covenant ("SAS Covenant") is void and unenforceable.  Alternatively they seek an order reforming the SAS Covenant or rescission of their Condominium purchases.  *See Bergman v. Spruce Peak Realty, LLC*, No. 2:11-cv-128-wks (D. Vt. filed May 13, 2011).

Stowe, Vermont, consisting of residential units, commercial units and common elements. Both Defendants have been involved in developing the Condominium. At the closing of the purchases of their units in the Condominium, each residential unit owner agreed to be bound by a Declaration of Covenants, Conditions, Easements and Restrictions for the Condominium ("SML Declaration"). *See* SML Decl. ¶ 12.13 (ECF No. 1-1). The SML Declaration included an arbitration provision, stating in relevant part:

> All disputes . . . arising under this Condominium Declaration between Shared Amenities Unit Owner, [or] Declarant . . . and any Owner . . . shall, upon the request of any party, be resolved by binding arbitration conducted by a single, neutral arbitrator. The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. . . . The decision of the arbitrator shall be conclusive and binding upon the parties and shall be enforceable through procedures adopted under the laws of the State of Vermont for the enforcement of arbitration awards. . . . Any claim which any party has against another party pertaining to the matters set forth or referred to in this Condominium Declaration must be presented by the claiming party to the other within one (1) year of the date the claiming party knew or should have known of the facts giving rise to the claim.

SML Decl. ¶ 12.18.

At issue is whether the arbitration clause permits class arbitration, and whether it is the responsibility of the court or the arbitrator to determine the answer to that question.

**II.   Discussion**

Section 3 of the Federal Arbitration Act requires a court in

which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action "upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement."  9 U.S.C. § 3.  The Federal Arbitration "'Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *KPMG LLP v. Cocchi*, 565 U.S. ___, ___, No. 10-1521, 2011 WL 5299457, at *2 (Nov. 7, 2011) (per curiam) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  Arbitrable claims must be sent to arbitration upon demand, even if this results in "'the possibly inefficient maintenance of separate proceedings in different forums.'"  *Id.* (quoting *Dean Witter*, 470 U.S. at 217.

The parties do not dispute that the SML Declaration contains a valid arbitration clause and that the *issues* underlying this lawsuit are arbitrable.  *See* Pls.' Reply 5 (ECF No. 27); Defs.' Mem. 3 (ECF No. 20).  Nonetheless, the Defendants contend that this Court should not stay this action pending arbitration, but enjoin the arbitration because the arbitration clause in the SML Declaration does not permit class (or consolidated) arbitration.

"Under federal law, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute

which he has not agreed so to submit.'"  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)); *see also Howsam v. Dean Witter Reynolds, Inc.*, 517 U.S. 79, 83 (2002).  Reflecting this principle, parties may agree to arbitrate "gateway" issues of arbitrability--such as whether their agreement covers a particular controversy, *see Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010); whether the arbitrator may reconsider a prior decision, *see T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 343 (2d Cir. 2010); or whether the arbitrator is empowered to determine arbitrability, *see Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005)--although "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks and brackets omitted); *accord Republic of Ecuador*, 638 F.3d at 393.

In deciding whether the parties agreed that an arbitrator should decide issues of arbitrability, this Court applies state-law principles regarding the formation of contracts.  *See First Options*, 514 U.S. at 944; *accord PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).  The relevant state-law principles are those of the state of Vermont, as the forum state

and the state designated in the SML Declaration's choice-of-law provision.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 & n.9 (1995); *Perry v. Thomas*, 482 U.S. 483, 492 & n.9 (1987).

The arbitration clause of the SML Declaration does not address class arbitration, either to permit it or prohibit it, nor does it address arbitrability issues in general.  The arbitration clause does, however, provide that arbitration is to "be conducted in accordance with the Commercial Arbitration Rules of the AAA."  SML Decl. ¶ 12.18.  Those rules specify that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  AAA Commercial Arbitration Rule 7(a).

The AAA has developed supplementary rules for class arbitrations that "apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the . . . AAA where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules."  AAA Supplementary Rules for Class Arbitrations 1(a).  The Supplementary Rules also provide that "the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the

applicable arbitration clause permits the arbitration to proceed on behalf of or against a class . . . ."  Supplementary Rules 3.

When the language of a contract is clear on its face, a Vermont court "will assume that the intent of the parties is embedded in its terms," will "give effect to every part of the instrument and form a harmonious whole from the parts."  *In re Grievance of Verderber*, 795 A.2d 1157, 1161 (Vt. 2002) (entry order); *accord State v. Philip Morris USA Inc.*, 2008 VT 11, ¶ 13, 945 A.2d 887, 892.  A contract may incorporate an extrinsic document by specific reference to it, and that document "will be interpreted as a part of the main instrument."  *Newton v. Smith Motors Inc.*, 175 A.2d 514, 516 (Vt. 1961); *accord Von Turkovich v. APC Capital Partners, LLC*, 159 F. Supp. 2d 314, 323 (D. Vt. 2003).  Applying these state-law principles of contract interpretation to the SML Declaration's arbitration clause, the parties agreed that an arbitrator would have the power to rule on issues concerning the scope of the parties' arbitration agreement.

Second Circuit precedent interpreting similar language in arbitration agreements supports the conclusion that the parties agreed that an arbitrator would determine the scope of their arbitration agreement.  In *Contec Corp.*, the appeals court acknowledged that "'the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable*

*evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'"  398 F.3d at 208 (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)).  The arbitration clause at issue provided that arbitration is to be conducted in accordance with the Commercial Arbitration Rules of the AAA, which then as now included Rule 7(a), empowering the arbitrator to rule on objections to the scope of the arbitration agreement.  The appeals court held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to the arbitrator".  *Id.; see also Republic of Ecuador*, 638 F.3d at 394 (holding that where parties' arbitration agreement specified use of the UNCITRAL rules, and these rules stated that the arbitrator had the power to rule on objections to jurisdiction, the parties had agreed to refer challenges to the validity of the arbitration agreement to the arbitral panel).

    The recent United States Supreme Court decision invalidating an arbitration panel's imposition of class arbitration does not upset the fundamental principle that arbitration is a matter of contract; indeed, in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), the Court reaffirmed

that "parties are generally free to structure their arbitration agreements as they see fit. For example, . . . parties may agree to limit the issues they choose to arbitrate, and may agree on rules under which any arbitration will proceed. They may choose who will resolve specific disputes. . . . [I]t is also clear from . . . the contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes." *Id.* at 1774 (internal quotation marks and citations omitted). From these principles the Court concluded that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775.

*Stolt-Nielsen* held that an arbitrator may not infer an implicit agreement to authorize class-action arbitration solely from an agreement to arbitrate. *Id.; see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011) (discussing the *Stolt-Nielsen* holding "that an arbitration panel exceeded its power under § 10(a)(4) of the FAA by imposing class procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law that would affect its interpretation"). The Supreme Court noted that it had not "decide[d] what contractual basis may support a finding that the parties agreed to authorize class-action arbitration," because in *Stolt-Nielsen* the parties had "stipulated that there

was 'no agreement' on the issue of class-action arbitration." *Stolt-Nielsen*, 130 S. Ct. at 1776 n.10; *see also Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 120 (2d Cir. 2011) (reasoning that the Court in *Stolt-Nielsen* found no express or implicit intent to submit to class arbitration because the parties agreed that they had not reached any agreement on the issue of class arbitration). This Circuit has therefore concluded that the Supreme Court has "declined to hold that an arbitration agreement must *expressly* state that the parties agree to class arbitration. . . . The Court contemplated that an arbitration agreement may contain an implicit agreement to authorize class arbitration, but an 'implicit' agreement to authorize class arbitration may not be 'infer[red] solely from the fact of the parties' agreement to arbitrate.'" *Id.* at 121 (quoting *Stolt-Nielsen*, 130 S. Ct. at 1776).

In *Concepcion*--the Supreme Court's decision finding that the FAA preempted California's judicial rule that class arbitration waivers in consumer contracts were unconscionable--the Court held that class arbitration imposed by judicial rule was inconsistent with the FAA. *Concepcion*, 131 S. Ct. at 1750-51. It expressly excepted "consensual" class arbitration. *Id.* Acknowledging that parties may agree to arbitrate according to a variety of procedures, the Court held only that class arbitration could not be required by state law. *Id.* at 1752-53. Class arbitration is

not therefore prohibited by federal law, as the Defendants contend.  Whether there is a contractual basis for concluding that the Defendants agreed to submit to class arbitration is an issue that must be referred to the arbitrator, according to the unmistakable import of the parties' arbitration clause.

Accordingly, the Plaintiffs' Motion for a Stay Pending Arbitration, ECF No. 6, is **granted.**  Defendants' Motion to Stay and Enjoin Plaintiffs' "Class Arbitration" or "Consolidated Arbitration", ECF No. 21, is **denied.**


Dated at Burlington, Vermont this 14th day of November, 2011.


                                         <u>/s/ William K. Sessions III</u>
                                         William K. Sessions III
                                         District Judge