MICHELLE BERGMAN, JEFFREY D.      :
BERGMAN, DAVID FRIEND, STEPS AWAY  :
AT STOWE MOUNTAIN LLC, PATRICK    :
SULLIVAN, SHELAGH SULLIVAN, KAREN  :
HESSE FLATOW, TALL PINES LLC, and  :
GEORGE WILSON, individually and on :
behalf of a class of similarly    :
situated persons,                  :
                                 :
       Plaintiffs,         :
                                 :
       v.                :  Case Nos. 2:11-cv-127
                                 :           2:11-cv-128
SPRUCE PEAK REALTY, LLC and      :
STOWE MOUNTAIN LODGE, LLC,      :
                                 :
       Defendants.        :
                                 :

## MEMORANDUM OPINION and ORDER

In this pair of class action complaints both parties have moved to consolidate the actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. The Plaintiffs seek to amend their complaint in Docket No. 2:11-cv-127 ("the '127 action" or "the Declaration lawsuit") pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, which the Defendants do not oppose. The Plaintiffs have moved to lift the stay pending arbitration imposed on November 14, 2011 in the '127 action. The Defendants oppose lifting the stay in the '127 action. In Docket No. 2:11-cv-128 ("the '128 action" or "the SAS Covenant lawsuit"), the Defendants seek to compel arbitration and to stay the action pending the outcome of arbitration, which the

Plaintiffs oppose.  The Plaintiffs' Motion to Lift the Stay,
Amend Complaint and Consolidate Actions in the '127 action, ECF
No. 39, is **granted.**  The Defendants' Motion to (A) Consolidate
Civil Action Nos. 2:11-cv-127 and 2:11-cv-128; (B) Compel
Arbitration of the '128 Action; and (C) Stay the Consolidated
Action Pending the Outcome of Arbitration, ECF NO. 57, is
**granted.**  The Plaintiffs are given leave to file their amended
complaint in the '127 action.  The cases are consolidated.  The
stay in the '127 action is lifted.  The Defendants' motions to
compel and to stay the consolidated action are **granted.**

## I.   Background

On May 13, 2011, Plaintiffs, owners of interests in
residential units in the Stowe Mountain Lodge Condominium
("Condominium"), filed two class action lawsuits in this Court
against the developers of the Condominium, the Declaration
lawsuit and the SAS Covenant lawsuit.  In the Declaration lawsuit
Plaintiffs sought reformation of the Declaration, as well as
damages under the Vermont Common Interest Ownership Act
("VCIOA"), under the Vermont Consumer Fraud Act ("VCFA"), and for
common law fraud.  *See* Class Action Compl., '127 action, ECF No.
1.  In the SAS Covenant lawsuit Plaintiffs seek to void or reform
the SAS Covenant or rescind their Condominium purchases, as well
as to obtain damages under the VCIOA, the VCFA, the Interstate
Land Sales Full Disclosure Act of 1968 ("ILSA"), and for breaches

2

of the SAS Covenant. *See* Second Am. Class Action Compl., '128 action, ECF No. 41. Plaintiffs also commenced an arbitration action on May 23, 2011, with respect to the '127 action claims, and sought to stay the '127 action pending the outcome of arbitration.

This Court granted the stay on November 14, 2011, finding that under the arbitration clause in the Stowe Mountain Lodge Condominium ("SML") Declaration, issues of arbitrability were for the arbitrator to resolve. Mem. Op. & Order 7, '127 action, ECF No. 33. On July 10, 2012, the Arbitrator issued Procedural Order ("P.O.") No. 3, in which he ruled that claims for declaratory relief and for breach of contract are arbitrable, and that statutory and common law fraud and misrepresentation claims are not. *See* P.O. No. 3 at 14, '127 action, ECF No. 39-2. On the same day, the Arbitrator issued a Partial Final Clause Construction Award ("PFCCA"), ruling that the claims for declaratory relief and for breach of contract are not arbitrable on a class basis. *See* PFCCA 23, '127 action, ECF No. 39-1. The PFCCA was confirmed by this Court on August 23, 2012.

The Arbitrator's rulings substantially limited the number of claimants and claims in the arbitration proceeding.

Following the Arbitrator's rulings, the Defendants moved to compel arbitration of the '128 action, consolidate it with the '127 action and stay the consolidated action pending the outcome

3

of arbitration.  The Plaintiffs moved in the '127 action to lift
the stay, amend their complaint and consolidate it with the '128
action.  Their proposed amended class action complaint deleted
the claims over which the Arbitrator assumed jurisdiction, and
consists of a request for declaratory relief to prohibit
Defendants from collecting charge-back assessments and to require
them to install individual electric meters for each residential
unit; and a statutory consumer protection claim for failure to
disclose charge-backs to the residential unit owners and for
misrepresentation concerning sub-metering of electricity
consumption.

## II.  Discussion

### A.    Motion to Amend & Motions for Consolidation[1]

Rule 15(a)(2) permits a party to amend its pleading by leave
of court or with the opposing party's written consent.  Fed. R.
Civ. P. 15(a)(2).  The Defendants have consented to the
amendment, and the Court grants leave to Plaintiffs to file an
amended complaint in the '127 action.

Rule 42(a) of the Federal Rules of Civil Procedure permits
consolidation of actions that involve common questions of law or
fact.  Fed. R. Civ. P. 42(a)(2).  The parties acknowledge and the
Court finds that the two actions involve common questions of law

---

[1]    Should the Court keep the November 14, 2011, stay in place, the
Plaintiffs withdraw their motion to consolidate the two cases.

and common facts.  The '127 action and the '128 action are hereby consolidated.

**B.    The Motion to Compel Arbitration**

"'Under the [Federal Arbitration Act ("FAA")], the role of courts is limited to determining two issues:  I) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'"  *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (quoting *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004)).

The SAS Covenant was made by SPR as owner of the "Shared Amenities Unit," which consists of various indoor and outdoor areas and improvements in the complex, some of which are reserved to the Shared Amenities Unit owner and its guests and invitees, and some of which are made available to some or all of the unit owners.  SAS Covenant ¶ D.  The SAS Covenant declares that its covenants, conditions and restrictions run with the land, are binding upon the owners and exist for their benefit.  *Id.* ¶ F.

According to the SAS Covenant's arbitration clause, residential unit owners such as the Plaintiffs do not have standing to exercise rights under the SAS Covenant.  If an owner wishes to pursue a claim against SPR with respect to any provision of the SAS Covenant, that owner may do so only through action it causes the Spruce Mountain Lodge Condominium Owners

5

Association ("SMLCOA") to take on the owner's behalf. All disputes between the Shared Amenities Unit Owner and the SMLCOA must at the request of either party be resolved by an arbitration conducted in accordance with the Commercial Rules of the American Arbitration Association. *Id.* ¶ 12.14. A portion of the clause entitled **NOTICE OF ARBITRATION** states "**This Section 12.14 is an agreement to arbitrate. As a consequence, no party shall be able to bring a lawsuit concerning any dispute that may arise which is covered by this agreement to arbitrate . . . . Instead, any such dispute must be submitted to an impartial arbitrator.**" *Id.* (bold typeface in original).

"[T]he FAA does not require parties to arbitrate when they have not agreed to do so . . .[; i]t simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Ordinarily, the validity of an arbitration clause is a matter for the court to decide. *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. ___, 2012 WL 5895686 at *2 (Nov. 26, 2012) (per curiam); *accord Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 407 (2d Cir. 2009). However, this arbitration clause, like the arbitration clause in the Stowe Mountain Lodge Condominium ("SML") Declaration, specifies that the arbitration shall be conducted in accordance with the

Commercial Rules of the American Arbitration Association ("AAA"), including its rules of practice, procedure and evidence. SAS Covenant ¶ 12.14. Those rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rule 7(a).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Where an arbitration clause "explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator," however. *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

In its November 14, 2011, ruling in the '127 action, the Court concluded that identical language in the arbitration clause of the SML Declaration meant that the parties intended the arbitrator to rule on issues of arbitrability, in that case the scope of the arbitration agreement. *See* Mem. Op. & Order 7, ECF No. 33. In the '128 action, the parties have reversed the positions they held in the '127 action, the Defendants now

seeking to compel arbitration when they previously sought to enjoin it, and the Plaintiffs seeking to avoid arbitration when they previously invoked it.

This reversal of positions brings to light an ambiguity in both arbitration clauses that was not relevant when ruling on the Plaintiffs' motion to stay the '127 action to permit arbitration to proceed. According to the SAS Covenant arbitration clause, disputes arising under the SAS Covenant between SPR—as the Shared Amenities Unit Owner—and the SMLCOA are to be resolved by binding arbitration "upon the request of either party." SAS Covenant ¶ 12.14. That is to say either SPR or the SMLCOA may, but is not required to, seek to arbitrate a dispute arising under the SAS Covenant. For the provision to come into operation a party must make a request for arbitration. The record does not reflect that the Defendants have requested that the SMLCOA—or the Plaintiffs for that matter—arbitrate their grievances pertaining to the SAS Covenant, or that the SMLCOA or the Plaintiffs have refused to arbitrate those grievances. Neither the SMLCOA nor the Plaintiffs have sought arbitration of the claims in the '128 action. As far as the Court is aware, the Defendants have not requested that any of the Plaintiffs' claims be resolved by arbitration. Without a request to arbitrate, arguably the arbitration clause does not apply.

The paragraph in bold typeface in the arbitration clause,

8

however, notifies the parties that any dispute that is covered by the agreement to arbitrate must be submitted to an impartial arbitrator, and that no party shall be able to bring a lawsuit concerning a dispute that is covered by the agreement. Given no evidence that the parties regard the arbitration clause as permissive or elective, and mindful that doubts concerning the interpretation of an arbitration clause should be resolved in favor of arbitration, *see WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997), the Court concludes that the Defendants have appropriately moved to compel arbitration.

In keeping with its November 14, 2011, ruling construing identical language in the arbitration clause of the SML Declaration, the Court concludes that by incorporating the Commercial Rules of the American Arbitration Association in the arbitration clause of the SAS Covenant, the parties intended the arbitrator to rule on issues of arbitrability, specifically any questions "with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Ass'n Commercial Arbitration Rule 7(a). The Court concludes that the matter must be referred to arbitration pursuant to 9 U.S.C. § 4. Issues concerning the existence, scope or validity of the arbitration agreement must be presented to an arbitrator.

The Plaintiffs argue that the motion to compel arbitration should be regarded as an untimely motion to reconsider the

Court's ruling in the '128 action denying Defendants' motion to dismiss for failure to state a claim, where it stated "Plaintiffs are entitled to present evidence that the provision in the arbitration clause that forces them to act through the SMLCOA is unenforceable, and that therefore they are not contractually barred from bringing suit." *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 666 (D. Vt. 2012). The Defendants' motion to compel arbitration seeks to compel arbitration. The arbitration clause provides that issues regarding the validity of the agreement are to be determined by the arbitrator. In the sentence quoted by the Plaintiffs the Court made no determination that the Plaintiffs were entitled to present that evidence in a judicial proceeding. Presumably the Plaintiffs will present evidence that the agreement is unenforceable in the arbitral proceeding. Reconsideration of this Court's ruling in the '128 action has neither been sought nor obtained; the Defendants have simply sought to compel arbitration.

The Plaintiffs also argue that Defendants waived their right to request arbitration by litigating the matter in this court. A party may waive its right to arbitration. *See Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998). "[W]aiver of arbitration 'is not to be lightly inferred,'" *Leadertex, Inc. v.*

*Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985)), however, and "doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Id*.

A threshold question is whether the issue of waiver is to be decided by the court or the arbitrator. In this Circuit, a waiver of arbitration by participation in litigation is a matter for judicial determination. *See, e.g., S & R Co.*, 159 F.3d at 83-84; *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995)). *But see Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) (holding that issues of waiver and estoppel which arguably undermined the agreement itself were arbitrable because of clear and unmistakable evidence that the parties intended the issues to be decided by the arbitral panel).

*Republic of Ecuador* does not control the waiver issue in this case. *In Republic of Ecuador*, the panel considered an argument that by agreeing to litigate a dispute with Ecuadorian citizens in Ecuador the defendant had waived or was estopped from commencing Bilateral Investment Treaty ("BIT") arbitration against Ecuador. Ecuador maintained that its waiver and estoppel arguments undermined the validity of the arbitration agreement itself, and thus the issue was presumptively for the court to decide. The panel concluded that the BIT arbitration rules provided "clear and unmistakable evidence" that the parties

intended these issues to be decided in arbitration.  *Id.*

*Republic of Ecuador* did not discuss the Second Circuit cases accepting judicial determination of waiver by litigation, but that is hardly surprising, for two reasons.  One, of significance in *Republic of Ecuador* was the argument that the defendant's conduct in agreeing to litigate in Ecuador had the effect of undermining the arbitration agreement itself, rather than merely barring Chevron from proceeding to arbitration.  *See id.*  Two, the parties and the relief sought in the two proceedings were different:  in the Ecuadorian litigation private citizens sought relief for the devastation of the Ecuadorian rainforest, allegedly caused by oil exploration and drilling operations; in the BIT arbitration Chevron Corporation sought relief from Ecuador for allegedly interfering in the lawsuit and for failing to honor a release from liability.  *See id.* at 388, 390.  By contrast, here the same plaintiffs and the same defendants are jockeying for position on the same issues.

The Court concludes that the waiver issue in this case is appropriate for judicial determination.  *See S & R Co.*, 159 F.3d at 83.  Factors to be considered in determining waiver include the time elapsed from the commencement of litigation, the amount of litigation, and prejudice to the opposing party.  *Louisiana Stadium*, 626 F.3d at 159.  "The key to a waiver analysis is prejudice," however.  *Thyssen, Inc. v. Calypso Shipping Corp.,*

*S.A.*, 310 F.3d 102, 105 (2d Cir. 2002).  Prejudice may be substantive or it may be due to excessive costs and time delay. *Louisiana Stadium*, 626 F.3d at 159.

Because without a demonstration of prejudice there can be no waiver, the Court turns to the Plaintiffs' assertion of prejudice.  As evidence of prejudice, Plaintiffs point to having faced three intensively briefed motions to dismiss that attacked the merits of their claims, and having endured many months of unnecessary delay which caused the Plaintiffs and the putative class members to incur additional SAS fees.  In addition, they claim prejudice in the dismissal of one of the counts of their complaint as time-barred and their fear that the Defendants will renew their challenges to the viability of the Plaintiffs' claims in arbitration.  The Court is not persuaded that these circumstances, undoubtedly irksome, amount to prejudice.

As to the three motions to dismiss, Plaintiffs responded to the first by filing an amended class action complaint, and the first motion to dismiss was denied as moot.  The Defendants then challenged the first amended class action complaint; the Court granted the motion to dismiss in part and denied it in part and gave leave to replead.  The Plaintiffs filed a second amended class action complaint and the Defendants have moved to dismiss one count, asserting that the Plaintiffs failed to cure the defects that required its dismissal.

"[T]he litigation of substantial issues going to the merits may constitute a waiver of arbitration." *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 461 (2d Cir. 1985). The only ruling on the merits to date has been the dismissal on statute of limitations grounds of any Plaintiff's 15 U.S.C. § 1703(a)(1) claim that is based on a purchase and sale agreement executed before May 13, 2008, and the dismissal of Plaintiffs' common law fraud claim.[2]  Confronted with a complex complaint, two years of litigation on the merits and considerable discovery before a defendant sought arbitration, the *Sweater Bee* court upheld the district court's order compelling arbitration of the arbitrable issues. *Id.* at 466; *see also Rush*, 779 F.2d at 890-91 (reversing a district court's finding of waiver on the basis of expense, delay, and litigation on the merits).  In this case, which is far less complex, which has involved less than two years of litigation[3] and no discovery, and where many of the claims are likely nonarbitrable, Plaintiffs have not sustained their "heavy burden" of showing waiver. *Sweater Bee*, 754 F.2d at 466.

Moreover, the Plaintiffs themselves have contributed to a proliferation of filings by packaging their claims in three separate actions.  The Court has no doubt that they had good-

---

[2]  If the Arbitrator employs the same analysis of the SAS Covenant arbitration clause as he did for the Declaration arbitration clause, he is likely to conclude that the common law fraud claim is nonarbitrable, in any event.

[3]  The '128 action was filed on May 13, 2011.

faith legal and strategic reasons to do so.  The Court equally
has no doubt that the Defendants have good-faith legal and
strategic reasons to challenge both the substance of the claims
and the manner in which they have been brought.  All parties have
been aware from the onset of this litigation that the scope and
validity of the arbitration clauses in the SML Declaration and
the SAS Covenant would be at issue.  The parties' approaches have
evolved as they have received rulings from this Court and from
the Arbitrator.  Under the circumstances, the Court cannot find
that the Defendants have waived the right to have the arbitrable
portions of this dispute resolved in arbitration.

Finally, the Plaintiffs argue that the FAA does not apply to
a purely intrastate transaction, the SAS Covenant is a purely
intrastate real estate-related services contract with no
substantial or direct connection to interstate commerce, and the
arbitration clause is invalid under the Vermont Arbitration Act.

The FAA covers arbitration clauses in contracts "evidencing
a transaction involving commerce."  9 U.S.C. § 2.  The Supreme
Court has interpreted this phrase "as implementing Congress'
intent 'to exercise [its] commerce power to the full.'"  *Circuit
City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) (quoting
*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995)).
The FAA thus "encompasses a wider range of transactions than
those actually 'in commerce'—that is, 'within the flow of

interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (quoting *Allied-Bruce*, 513 U.S. at 273). Like the debt-restructuring agreements at issue in *Citizens Bank*, the SAS Covenant satisfies the FAA "involving commerce" test. The Defendants have engaged in marketing and sales activities for their condominium units far beyond the borders of Vermont. The SML Declaration and the SAS Covenant were key documents in that activity. *See* Class Action Compl., '127 action; Second Am. Class Action Compl., 128 action. Indeed, the Plaintiffs invoked the FAA in requesting an order staying the '127 action on the Declaration. Although it is true that the Declaration and the Covenant are distinct documents, it is undisputed that these documents were distributed "via means or instruments of transportation or communication in interstate commerce and the mails," Pls.' Opp'n to Defs.' Mot. to Dismiss 15 n.7, ECF No. 53, in connection with Defendants' marketing and sales efforts.

The FAA, and not the Vermont Arbitration Act, applies to the SAS Covenant arbitration clause.

For all of the reasons stated above, the Court **grants** the motion to compel arbitration. An arbitrator will determine his or her jurisdiction under the agreement, including the validity of the agreement, who are proper parties to arbitration under the agreement, and the scope of arbitrable issues under the

agreement.

**C.    The Motions to Lift Stay in the '127 Action and Grant a Stay in the Consolidated Actions**

In the '127 action, the Arbitrator has accepted jurisdiction over the following claims:  1) declaratory relief with respect to the SML Declaration (except for the allegations of misrepresentations); 2) breach of the SML Declaration; and 3) violation of the VCIOA.  P.O. No. 3 at 14.  The Arbitrator has declined jurisdiction over the remainder of the claims "without prejudice to Claimants' ability to pursue such claims in an appropriate forum."  *Id.* at 17.  In response to the Arbitrator's ruling, the Plaintiffs drafted their First Amended Class Action Complaint limited to a claim that misrepresentations about sub-metering and failure to disclose charge-backs to the residential unit owners violates Vermont's consumer protection law, and a claim for declaratory relief based upon those misrepresentations and failures to disclose.

"'[I]f some, but not all, of the claims in the case are arbitrable, [a court] must then decide whether to stay the balance of the proceedings pending arbitration.'"  *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998)); *accord Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).  Although maintaining the stay in the '127 action might be

17

appropriate if the arbitrable claims predominated, or if the nonarbitrable claims were of questionable merit, *see id*. at 856, at this early stage of the litigation the arbitrable and nonarbitrable claims appear relatively equal in weight and merit.

The arbitration proceeding and the '127 action both deal with the charge-backs of a portion of the Shared Amenities Unit Condominium assessments and the failure to sub-meter electricity consumption. The arbitration will address claims related to the interpretation of and performance under the SML Declaration with respect to these issues. According to the Arbitrator's interpretation of the scope of the arbitration clause, claims of misrepresentation and failure to disclose to potential purchasers are reserved for the Court. Although the issues are undoubtedly related, there is no real risk of inconsistent results: should the Arbitrator find that there has been no breach of the SML Declaration, the Court may still find that the Defendants misrepresented or failed to disclose material information when the residential owners purchased their units. And should the Court find that the Plaintiffs cannot prevail on their claims of misrepresentation and failure to disclose, the Arbitrator may yet find that the Respondents are not permitted to charge back a portion of the Shared Amenities Unit Condominium assessments, or to refuse to sub-meter electricity consumption. Under these circumstances, where the outcome of the arbitration proceeding

will not affect a determination whether SPR made misrepresentations or failed to disclose material facts in its marketing of the residential units, continuance of the stay pending the outcome of arbitration is not warranted.

Moreover, the Defendants' suggestion that an arbitration award will have preclusive effect or that the Court will likely never address the charge-back and sub-metering issues glosses over the difference, as the Court understands it, between the claims now pending in arbitration and before this Court. Under Vermont law, which applies to the determination of issue preclusion in this diversity case, *see BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997), "[a]n arbitration award will preclude relitigation of an issue in a subsequent judicial proceeding where the parties and issues in both proceedings are the same, the issues were resolved by a final award on the merits, the arbitration provided a full and fair opportunity to litigate the issues and it is fair to preclude the subsequent litigation." *Mellin v. Flood Brook Union Sch. Dist.*, 790 A.2d 408, 416 (Vt. 2001). Should the Arbitrator determine an issue that Plaintiffs seek to relitigate, the Defendants may invoke collateral estoppel. The mere speculation that the Arbitrator's award on the interpretation of and performance under the Declaration may implicate an issue relevant to Plaintiffs' misrespresentation and nondisclosure claims is

insufficient reason to delay resolution of the nonarbitrable claims.

It is fair criticism that this bifurcated proceeding is less than efficient, but that is a function of the Defendants having drafted a narrow arbitration clause that will not allow all of the Plaintiffs' claims to be arbitrated. *Cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (acknowledging that piecemeal resolution of disputes may result from enforcement of arbitration agreements).

In the exercise of its discretion, the Court lifts the stay in the '127 action. *See, e.g.*, *Chang v. Lin*, 824 F.2d 819, 822-23 (2d Cir. 1987) (approving simultaneous arbitration and litigation on nonarbitrable claims in the context of federal securities litigation).

Nevertheless, having determined that threshold issues of arbitrability in the '128 action must be determined by an arbitrator, the Court must stay the consolidated action until those issues are resolved. *See* 9 U.S.C. § 3; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) ("§ 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'"). Once the Arbitrator determines the scope of the arbitration proceeding, the Court will entertain a motion to lift the stay to permit the nonarbitrable claims to proceed.

**III. Conclusion**

For the above-stated reasons, the Plaintiffs' Motion to Lift the Stay, Amend Complaint and Consolidate Actions in the '127 action is **granted.** The Defendants' Motion to: (A) Consolidate Civil Action Nos. 2:11-cv-127 and 2:11-cv-128; (B) Compel Arbitration of the '128 Action; and (C) Stay the Consolidated Action Pending the Outcome of Arbitration is **granted**.


Dated at Burlington, Vermont, this 13th day of December, 2012.


<u>/s/ William K. Sessions III</u>
William K. Sessions III
District Court Judge